**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **Robert Schannette** | **Docket no. 6:16-cv-01082** |
| **Versus** | **Judge Doherty** |
| **United specialty insurance company, et al** | **Magistrate Judge Whitehurst** |

---

**REPORT AND RECOMMENDATION**

Before the undersigned, on referral from the district judge, is a Motion To Remand filed by Plaintiff, Robert Schannette, [Rec. Doc. 13] and Defendants, United Specialty Insurance Company ("United"), GAT Express, LLC ("GAT") and José M. Canto's ("Canto"), Opposition thereto [Rec. Doc. 19]. For the reasons that follow, the undersign recommends that the Motion be granted.

*I. Background*

This case arises from a multi-vehicular accident which occurred on April 5, 2016, wherein Defendant Canto allegedly rear-ended a vehicle driven by Sesen Haile, which then rear-ended Plaintiff's 2001 Chevrolet Silverado. Plaintiff's vehicle then allegedly collided with another vehicle in front of him driven by Hang Thi Nguyen-Gaw. *R. 19-3, Exh. C., Uniform Traffic Crash Accident Report, p. 12.*

On March 15, 2016, Plaintiff filed a Petition for Damages in the Sixteenth Judicial District Court, Parish of Iberia, Louisiana, alleging that the accident caused him to sustain severe and permanent injuries. *R. 1-1, ¶¶ 2-4.* Plaintiff named United, GAT, Canto, and Louisiana Farm Bureau Casualty Insurance Company ("Louisiana Farm Bureau"), as defendants in the state action.[1] *R. 1*. Plaintiff alleged that Canto was in the course and scope of employment for GAT Express L.L.C. at the time of the accident. *R. 1-1, ¶ 8.* Plaintiff further alleged that United and State National issued a policy or policies of liability insurance coverage covering the GAT vehicle on the date of the accident. *Id. at ¶ 6.* Finally, Plaintiff alleged that Louisiana Farm Bureau maintained a policy of automobile insurance insuring Plaintiff for damages sustained a result of and uninsured or underinsured motorist ("UM").[2] *Id. at ¶ 9.*

On July 21, 2016, Defendants filed a Notice of Removal alleging subject matter jurisdiction based on diversity of citizenship under 28 USC § 1332. *R. 1*. Plaintiff filed this Motion To Remand on August 18, 2016 alleging"defects" in the Removal Notice and stating that Louisiana Farm Bureau and Plaintiff are

---

[1] Winter Group and State National Insurance Co., Inc. were also named as defendants but were dismissed on May 12, 2016 and August 8, 2016, respectively.

[2] Plaintiff's Louisiana Farm Bureau UM policy provided $15,000 in bodily injury and $5,000 in med-pay UM coverage. *R. 19-1*. Louisiana Farm Bureau filed a cross-claim asserting a claim of subrogation against Defendants to recover $4,849.90 in medical payments it alleges it paid to Plaintiff.

Louisiana citizens and therefore are not diverse. *R. 13*. On October 18, 2016, the Court ordered the corporate defendants, United and GAT, to provide specific information regarding their citizenship. *R. 23.* The corporate defendants complied with the Court's Order and filed their Memorandum setting forth the citizenship of each on November 1, 2016. *R. 27*. After reviewing the additional information, the Court found that complete diversity of citizenship existed as to all Defendants United and GAT and Canto. Accordingly, the only issue remaining before the Court is whether or not the non-diverse defendant, Louisiana Farm Bureau, is properly joined so that incomplete diversity of the parties renders this Court without subject matter jurisdiction.

*II. Improper Joinder Standard*

Plaintiff's remand motion is governed by the standard for improper joinder, as set forth below.

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See 28* U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno*

*v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002). Though the Court must remand to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir.1996).

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Here, the parties do not dispute that the amount-in-controversy requirement is met, but they disagree about whether the complete diversity requirement is satisfied. Indeed, Plaintiff and Louisiana Farm Bureau have Louisiana citizenship, which would ordinarily destroy complete diversity. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir.2004). And when a nondiverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332. But a defendant may remove by showing that the nondiverse party was joined improperly. *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir.2003).

The burden of demonstrating improper joinder is a heavy one, as the doctrine is a narrow exception to the rule of complete diversity. *Id.* at 222. A defendant may establish improper joinder by showing either (1) actual fraud in

pleading jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant. *Id.* at 222–223. The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016). In order to survive a 12(b)(6) motion to dismiss, "[plaintiff's] complaint must have contained 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* Which means that the plaintiff must plead "enough facts to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The scope of the inquiry for improper joinder, however, is even broader than that for Rule 12(b)(6) because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir.2004) (en banc). In conducting this inquiry, the motive or purpose for the joinder of the in-state defendant is irrelevant to this inquiry. *Smallwood* at 574. The Court must "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff."Travis v. Irby, 326 F.3d 644, 649 (5th Cir. 2003). Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id*. So, too, must the Court resolve all ambiguities of state law in favor of the non-removing party. *Id*.

*III. Law and Analysis*

In its motion to remand, Plaintiff argues that the removing defendants have failed to satisfy their heavy burden of showing that his UM carrier, Louisiana Farm Bureau, was improperly joined to defeat diversity jurisdiction. In particular, he argues that Defendants cannot satisfy their burden of proving that recovery in excess of the underlying policy is impossible as required by the fraudulent joinder doctrine and that his damages are sufficient to justify recovery from Louisiana Farm Bureau.

Defendants contend that even if his alleged injuries were caused by the accident in question, which Defendants assert were pre-existing, a quantum analysis of Plaintiff's injuries range between $15,000 and $165,000. Thus Defendants argue, Plaintiff's injuries are insufficient to establish a cause of action against the nondiverse UM carrier defendant.

The Petition for Damages provides that Plaintiff has suffered damages, including but not limited to the following: headaches, right side facial pain, spinal injuries to the neck and back; injuries to the right hip; and injuries to the bilateral neck. *R. 1-1, ¶ 11*. Plaintiff pled for damages for the following: past physical pain and suffering; future physical pain and suffering; past mental pain, anguish, and distress; future mental pain, aguish, and distress; past loss of enjoyment of life; future loss of enjoyment of life; past loss of income; future loss of income; past

loss of earning capacity; future loss of earning capacity; past medical expenses; and future medical expenses." *Id. at* ¶ *12.*

On April 9, 2015, Plaintiff sought treatment with Clark Chiropractic with complaints of "headache, right side facial pain, bilateral neck pain, right hip pain, and bilateral low back pain as a result of the subject motor vehicle accident." *R. 13-4, Exh. A, p. 20.* On April 22, 2015, Plaintiff was examined by Dr. Robert D. Franklin, a physical medicine and rehabilitation physician. Dr. Franklin noted that Plaintiff's chiropractic provided no significant relief and diagnosed him with a cervical, thoracic, and lumbar strain with possibility underlying spinal pathology and headaches, as well as, pain in his lower extremity of undetermined etiology. *R. 13-14, Exh. A, p. 26.* Dr. Franklin ordered cervical and lumbar MRI scans. *Id.*

On April 27, 2015, an MRI of Plaintiff's cervical spine revealed posterior disc protrusion/herniation with canal stenosis at C3-4, paracentral disc protrusions/herniation with canal stenosis at C4-5, posterior disc bulge with central canal stenosis at C5-6, and posterior disc bulge in mild canal stenosis at C6-7. *Id. p. 22*. The lumbar spine MRI revealed mild posterior disc bulges at L2-3 and L3-4, as well as a posterior disc bulge with ligamentum hypertrophy resulting in borderline central canal size at L4-5. *Id. at p. 24.*

As a result of the MRIs, Dr. Franklin referred Plaintiff to Dr. Blanda for an orthopedic evaluation. Dr. Blanda noted Plaintiff's pain was an 8 on a scale of 0-

10 in his neck and back. Plaintiff described the pain as constant—increasing with activity. *Id. at pp. 72-74*. On June 10, 2015, Dr. Blanda referred Plaintiff for physical therapy, which Plaintiff attended from June 17, 2015 until July 9, 2015. *Id. at pp. 31-33*.

Thereafter, Dr. Blanda referred Plaintiff to Dr. Staires for a cervical epidural steroid injection (ESI), however the ESI resulted in little or no improvement. *Id. at pp. 97-98.* In an examination of Plaintiff performed on November 10, 2015, Dr. Blanda noted that the EMG performed in October indicated left median nerve entrapment (carpal tunnel) and a "high probably of C6 radiculopathy." *Id. at pp. 82-84.* At that time Dr. Blanda recommended a cervical discogram at levels C3–7 "for further diagnostic purposes before a surgical recommendation is made." *Id.* He also recommended a nerve conduction study of the right lower extremity due to Plaintiff's "persistent radicular symptomy." *Id.*

In an April 19, 2016 examination, Dr. Blanda noted that Plaintiff's EMG and nerve conduction velocity showed left carpal tunnel and recommended that "a left carpal tunnel release would probably help with the left arm and neck symptoms." *Id. at pp. 103-104.* Dr. Blanda noted, however, "it doesn't appear that [Plaintiff's] neck is surgical based on the discography." *Id.* He advised Plaintiff to return in three months for follow up or for surgery orders is [sic] surgery is approved by then." *Id.*

Plaintiff asserts that the bulging and herniated disc in his neck and back are permanent injuries which will prevent him from being able to return to his profession of welding. *R. 13-4,* ¶ 7. Plaintiff states that "he is unable to bend and [twist] as required ... to perform any welding activities" and "does not believe he will be able to pass any company physical examinations sufficient to be employed as a welder in the future." *Id. at* ¶¶ *5, 6*. Plaintiff further states that he "has incurred substantial pain and anguish from injuries resulting from the subject accident on a daily and consistent basis. At the present, affiant has no end to his injuries in sight." *Id. at* ¶*8*.

The Affidavit of Debbie Smith, Plaintiff's counsel's paralegal, and the custodian of the medical records and medical bills kept in the normal course of business, states the record provides that at the date of the filing of this Motion, Plaintiff has incurred medical expenses in the total amount of $21,805.00.

Additionally, Plaintiff states that he has been unable to work since the April 5, 2015 accident which, at the time he filed this Motion, was 16 months. *Id. at* ¶ *5.* He further states that at the time of the accident, he was making $22.00 per hour on an off-shore rig, excluding his maintenance; that he worked 21 out of 52 weeks a year, or 2 weeks per month; and, that he made approximately $3,700.00 a week. *Id. at* ¶ *4.* Accordingly, Plaintiff's base wage claim is $3,700.00 per week x 21 weeks for a base wage of $77,700 per year. Also, as Plaintiff alleges he is unable to return

to work, his claim for lost wages would continue until the trial of this matter. While a trial date has not yet been scheduled, the district judge in this action schedules a trial at least one year from issuing the scheduling order. Assuming the scheduling order is issued in January, 2017 and the trial is conducted in February, 2018, Plaintiff's claim for lost wages could be $3,700.00 per week x 62 weeks (3 years), for a total past wage claim of $229,400.00.

Plaintiff acknowledges that the value of his future lost wage claim is uncertain at this time, but states that he is approximately 56 years of age and, based on the United States Social Security Administration's indication that the retirement age for a male of Plaintiff's age is 66.8 year of age—Plaintiff could have worked at least an additional 10 years.[3] *See*, *Deperrodil v. Bozovic Marine Inc.*, 2016 WL 6810728 (5th Cir. 2016). On that basis, Plaintiff claims his future lost wage claim has the potential to be approximately $777,000.00 dollars ($77,700.00 per year x 10 years). Future losses (income and medical expenses), however, must be discounted to present value. *Culver v. Slater Boat Co.*, 722, F.2d 114, 117 (5th Cir.1983). Future loss of income, must, also, reflect a judgment to net, after tax, value. *Id*. Based on the aforesaid jurisprudence, the Court finds that Plaintiff's

[3] In his Motion, Plaintiff states that he could work at least 18 more years. The Court is uncertain as to how Plaintiff calculated that he would work 18 more years. It is clear that the difference in Plaintiff's age of 56 and the retirement age of 66 is 10 years and not 18.

annual base wage claim of $77,700.00, net value, over a 10 year work period when discounted to present value would be approximately $563,377.05.

As the Court must assume Plaintiff's allegations in the Petition are true (even if doubtful in fact), *Twombly*, 550 U.S. at 555, Plaintiff would also recover general damages for his pain and suffering from his injuries, which have been ongoing since the accident. In support of his position that juries have awarded substantial sums for injuries of prolonged duration, Plaintiff cites *Asbahi v. Beverely Industries, LLC*., 2012 WL 1922300 (La. App. 1 Cir. 5/23/12). In *Asbahi* the jury award $1,550,000.00 in general damages for a rear-end collision in which the plaintiff suffered from cervical dystonia (involuntary muscle contractions).

On the other hand, Defendants cite *Hunter v. Sirmans*, 2008 WL 4717067 (W.D. La. Aug. 15, 2018) which they contend is a case involving a "very similar situation" to that in this case. *R. 19, p. 15*. While the *Hunter* case involved an accident between a tractor-trailer and the plaintiff's vehicle, the factual allegations as to that plaintiff's injuries are distinguishable. There, Hunter's alleged neck and back pain did not involve herniated discs, were termed "relatively modest" and were treated conservatively. The Court finds the reasoning in *Hunter* does not apply to this case.

Also, Defendants' memorandum includes their "quantum analysis" consisting of a list of cases which vary in terms of similarity of the factual basis

and the compensatory damage awards. The Court notes that two of the cases with similar factual backgrounds and injuries in which surgery was not performed awarded $135,000 and $165,000. Here, Dr. Blanda's records indicate that as of sixteen (16) months post-accident, he could not rule out surgery for Plaintiff's ongoing neck pain.[4]

The underlying insurer, United, represents that the limits of its combined single limited liability policy is $1,000,000. United further represents that all outstanding claims by the other persons involved in the accident were paid and the policy limits are presently $964,000. Resolving all issues of fact in favor of Plaintiff—his known medical expenses, albeit four (4) months ago, of $21,805.00, his lost wage claim of approximately $563,377.05 and, depending on whether or not surgery is performed, a possible past and future compensatory damages award of $165,000 to $900,000, plus future medicals and past and future lost earning capacity, it is plausible that Plaintiff's damages would exceed the $964,000 aggregate limit in United's liability policy.

Accordingly, the Court finds that the Defendants have failed to carry their burden of demonstrating Plaintiff's inability to establish a cause of action against the nondiverse defendant. Louisiana Farm Bureau's Louisiana citizenship is

---

[4] In *Parquette v. Certified Coating of California, Inc.*, 966 So.2d 91 (La.App. 4th Cir.2007), the state appellate court affirmed a jury's compensatory damages award of $900,000 for plaintiff's operated neck.

therefore relevant in the Court's determination of its jurisdiction; and without a showing of complete diversity of citizenship between Plaintiff and Defendants, this Court lacks subject matter jurisdiction in this case.

*IV. Conclusion*

For the foregoing reasons, the undersigned recommends that Plaintiff’s Motion To Remand [Rec. Doc. 13] be granted, and this action be remanded to the Sixteenth Judicial District Court, Iberia Parish, Louisiana.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party’s objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon

grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Signed at Lafayette, Louisiana, on this 6th day of December, 2016.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**